## Stayton, to use of Bryan, *versus* Riddle et al.

1. Since the Act of May 28th, 1858, P. L. 622, it is not unlawful for a debtor to pay, or a creditor to receive, more than six per cent. interest. The right to release and deduct the amount of usury from a mortgage debt is strictly personal in the mortgagor.

2. The terre tenants of the mortgaged premises cannot defend as to the amount of usury charged, in a *scire facias*, on the mortgage; nor can they make such defence by virtue of an agreement with the mortgagor made before they became terre tenants, that he would assert his personal rights and defend as to usury.

   Their remedy is an action against the mortgagor for a breach of his contract.

October 21st, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Butler county*; Of October Term 1886, No. 123.

This was a *scire facias* sur mortgage by E. K. Stayton to the use of W. W. Martin, now to the use of George S. Bryan, against W. H. H. Riddle, Alexander Mitchell, J. C. Vanderlin and Margaret Vanderlin, his wife, terre tenants, who defended as to so much of the mortgage as was usurious.

The following are the facts as they appeared on the trial before HAZEN, J.

Dr. Samuel Graham was the owner of several pieces of property in Butler and its vicinity, upon which he gave a mortgage to E. R. Stayton for $7,000, upon the 23d day of February, 1876. The mortgage, on the 24th of February, 1876, was assigned by Stayton to W. W. Martin, and by Martin to George S. Bryan. The mortgage and assignments were duly recorded. Among the other properties upon which the mortgage was a lien was a house upon Jefferson street, in Butler, in which Dr. Graham and his family resided. The mortgage was the first lien upon the properties described in it, but after the date of its record a number of judgments were entered against Dr. Graham.

Upon one or more of these judgments the properties mortgaged were about to be sold by the sheriff, subject to the mortgage, and Dr. Graham, anxious to save the home property, that on Jefferson street, went to W. H. H. Riddle, one of the defendants, for the purpose of arranging it, if possible.

The mortgage contained $1050, of usurious interest. Riddle alleged, and introduced evidence to sustain the allegation, that Dr. Graham agreed with him that if he would purchase the property at sheriff's sale, he would defend in a *scire facias* on

the mortgage against this usury for the benefit of Riddle. This Dr. Graham denied.

Riddle purchased the property at sheriff's sale subject to said mortgage.

After the sheriff's sale this writ of *scire facias* was issued to collect the balance due on the Stayton mortgage. A defence thereto was put in by the defendants, Mr. Riddle and those claiming under him, as to usury, Dr. Graham not joining therein. This, was the action tried in the court below from which this writ of error is taken. As to that part of the mortgage not alleged to be usury; judgment was taken by plaintiff under rules of court. Some time after the *scire facias* was issued, Dr. Graham appeared and confessed judgment. in favor of plaintiff for $1,676.07, which was the amount of usury claimed by Riddle et. al., to be included in the mortgage.

Before the trial of the case below, a decree had been entered by the Court of Common Pleas of Butler county, sitting in equity, concerning the subject matter of the defence in this case. Riddle filed a bill in equity against Dr. Graham and E. R. Stayton for use of W. W. Martin now for use of George S. Bryan, setting up the facts as alleged by him as a defence in the trial of this case below, and praying that the judgment confessed by Dr. Graham for $1,676.07 be set aside and vacated ; that Riddle be permitted to defend against the *scire facias sur* mortgage to the amount of the usury and illegal interest therein ; that Stayton, for use of Martin, now for use of Bryan, plaintiff in said *scire facias*, be restrained from having any other or greater judgment therein, and for such other and further relief in the premises as to the court may seem proper. To this bill Dr. Graham and Bryan made answer denying the agreement set up by Riddle that Graham had agreed to defend the mortgage for Riddle's benefit as to usury. The issue having been joined, a Master was appointed before whom the testimony was taken. The Master recommended a decree dismissing the bill, to which Riddle filed exceptions. The court, upon argument, confirmed the Master's report and dismissed plaintiff's bill without prejudice to plaintiff's rights at law.

The plaintiff presented, *inter alia*, the following points:—

1. Dr. Samuel Graham, the mortgagor in the mortgage sued upon in this case and the original debtor, having confessed judgment in favor of the plaintiff for the amount in dispute, and not being a party to this issue being tried, the defence raised by the defendants being that of usury contained in the mortgage, the verdict of the jury must be in favor of the plaintiff against the defendants, they being terre-tenants, who became so by virtue of the sheriff's sale of the property mort-

[Stayton, to use of Bryan, *v.* Riddle et al.]

gaged, the purchase by them or by Mr. Riddle, under whom they claim having been made subject to the lien of the mortgage.

Answer. As a proposition of law in the light of the facts in this case, we refuse this.. We don't know of any facts that would sustain it or make it applicable to this case. (Eighth assignment of error.)

2. If the facts in the case are as contended by the defendants, that Dr. Graham agreed with Riddle by parol before the sheriff's sale made to Riddle that he (Graham) would defend the mortgage as to the usury contained in it, and that notwithstanding that agreement Graham has confessed judgment for the usury contained in the mortgage in favor of the plaintiff, and is not defending this suit, to enable the defendants in their own proper persons to interpose this defence against the plaintiff's claim, they must have shown such facts as would entitle them to a decree for the specific performance against Graham in a suit brought by them against him to enforce the agreement made between Graham and Riddle. This they have not shown, and their defence, being an equitable one, is not available in this action, and the verdict should therefore be in favor of the plaintiff.

Answer. As a whole we refuse this. It assumes, in order to make it a proposition, conclusions that are solely for the jury. (Ninth assignment of error.)

3. The evidence shows that the agreement between Riddle and Graham, under which Graham was to defend upon account of usury, was a fraud upon the judgment creditors of Dr. Graham, whose liens followed the lien of the Stayton mortgage, and the defendants are not permitted to take advantage of this fraud. The verdict of the jury must therefore be in favor of the plaintiff.

Answer. Refused. (Tenth assignment of error.)

4. Dr. Graham's agreement with Mr. Riddle to defend as to the usury contained in the mortgage, and his subsequent refusal so to do, does not enable the defendants to defend upon their own account. If Riddle, or other of the defendants claiming under him, is prejudiced by such refusal, an action may lie upon his or their behalf against Dr. Graham for breach of his agreement; and in such action alone can the defendants recover the damages sustained on account of such refusal.

Answer. Refused. (Eleventh assignment of error.)

5. The decree of the court in the case of W. H. H. Riddle *v.* Samuel Graham et al., Equity No. 3 of March Term, 1881, concludes the defence in this case set up under Graham's contract to put in defence of usury. The verdict must therefore be in favor of the plaintiff.

[Stayton, to use of Bryan, v. Riddle et al.]

Answer. Refused. (Twelfth assignment of error.)

6. Under all the evidence the verdict must be in favor of the plaintiff.

Answer. Refused. (Thirteenth assignment of error.)

The defendant presented the following points:—

1. If the jury find that Dr. S. Graham, mortgagor, before the sheriff's sale informed Mr. Riddle that the mortgage contained $1,050 usury, and that if he (Riddle) would purchase at the sheriff's sale, he (Graham) would defend against the usury for the benefit of Mr. Riddle, and Riddle agreed to do, and did in good faith, relying upon this arrangement, purchase at the sale, gauging his bid accordingly, he is entitled in the *sci. fa.* to set up the amount of said usury as a defence *pro tanto* against the plaintiff.

Answer. Affirmed. (Fifteenth assignment of error.)

2. If the jury find the facts set out in point No. 1, and that all the mortgage except the usury is embraced in the judgment taken April 24th, 1879, the verdict should be in favor of the defendants.

Answer. Affirmed. [Sixteenth assignment of error.)

3. If the jury find the arrangement was made before the sale, as claimed by the defendants, they can defend as effectively as Dr. Graham could; his right to make such defence would be by such agreement transferred to the defendants.

Answer. Affirmed. (Seventeenth assignment of error.)

4. If the jury find Dr. Graham received only $5,950, and gave his mortgage for $7,000, with intereest from date, there is no consideration for the $1,050 not received by Dr. Graham, and the defendants can defend to that extent in this action.

Answer. Affirmed. (Eighteenth assignment of error.)

5. If the jury find that after the purchase at sheriff's sale, and after the agreement in evidence was made, and after the defendants had become parties to the *sci. fa.*, Dr. Graham appeared voluntarily and confessed judgment for a sum, including the usury he had agreed to defend if the purchase at sheriff's sale was made, and this was done with the knowledge of the plaintiff, such judgment is collusive, and not binding on the defendants in this suit.

Answer. Affirmed. (Nineteenth assignment of error.)

Verdict for the plaintiff in the sum $219.99, being the amount due on the mortgage, less the usurious interest.

Judgment was entered on the verdict, whereupon the plaintiff took this writ, assigning for error, *inter alia*, the answer of the court to the points of the plaintiff and of the defendants, as shown above.

*C. A. Sullivan* (*H. Campbell* with him), for plaintiffs in

[Stayton, to use of Bryan, v. Riddle et al.]

error.—Under the Usury Act of 1858, two classes of persons have been held in Pennsylvania to be incapable of setting up the defence of usury:

1. Creditors.

2. Purchasers of the property encumbered by the usurious lien, as lien creditors upon distribution before an auditor: Appeal Titusville Bank, 5 Norris, 530.

Second mortgage as to usury contained in first mortgage: Wheelock v. Wood, 12 Norris, 298; Lennig's Appeal, 12 Norris, 301.

Purchaser at private sale who agrees to pay mortgage: Verner v. Carson, 16 P. F. S., 440.

Purchaser at sale of assignee in bankruptcy who buys subject to mortgage: Bank v. Rosebury, 31 P. F. S., 312.

Since the Act of 1858 we contend that this court has always held that no one except the debtor or other persons connected with the original loan, can take advantage of this usurious contract.

"No longer (since the Act of 1858) can a stranger to the transaction, by a *qui tam* action, make a forfeiture of the whole debt. The statute professes to deal only with the parties to the proceedings. The debtor may elect whether he will withhold the excess, or recover it back within the time limited. Failing to act in time he has no remedy. No public informer can interfere either before or after the payment: Bank v. Roseberry, 31 P. F. S., 312; Bly v. National Bank of Titusville, 29 P. F. S.. 457; Macungie Bank v. Hottenstein, 8 Nor., 330.

If Riddle bought the properties at sheriff's sale, subject to the mortgage containing the usury, to permit him to interpose the defence of usury, is to allow the perpetration of a fraud.

Under statutes which do not declare usurious contracts absolutely void, usury has uniformly been held in the United States to be a strictly personal defence, to be only taken advantage of by the parties to the usurious agreement and their privies: Freeman's note to Davis v. Garr, 55 Am. Dec., 398; Tyler on Usury, 403.

One who has for a full consideration on a conveyance of land assumed the payment of a usurious mortgage cannot take advantage of the usury: 2 Jones on Mortgages, sec. 1491; 3 Parsons on Contracts, 122; Cramer v. Lepper, 26 Ohio St., 59; Burlington Mut. Loan Asso. v. Heider, 55 Ia., 424.

A purchaser of an equity of redemption cannot set up or avail himself of usury: Green v. Kemp, 13 Mass., 515; Conover v. Hobart, 24 N. J. Eq., 120; Lee v. Stiger, 30 N. J. Eq., 610; Reed v. Eastman, 50 Vt., 67; McGuire v. Van Pelt, 55 Ala., 344; DeWolf v. Johnston, 10 Wheaton, 367.

*John M. Thompson* (*S. H. Piersol* with him), for defendants in error.—A terre-tenant who purchases the mortgaged premises at sheriff's sale is entitled to defend against usury in the mortgage: Link *v.* Germantown Building Asso., 8 N., 15; Green *v.* Tyler, 3 Wr., 361. The agreement of Dr. Graham gives them the right to defend against usury: Parker *v.* Suloff, 94 Pa. St., 527; Cowley's Appeal, 1 Grant, 401; Hansell *v.* Lutz, 8 Harris, 284; Good *v.* Grant, 26 P. F. S., 52.

Mr. Justice STERRETT delivered the opinion of the court, November 1st, 1886.

Assuming the fact, impliedly found by the verdict, that, as between the parties to the mortgage, the debt secured thereby was tainted with usury to the extent of $1,050, it necessarily follows that the mortgagor had a right, under the provisions of the Act of May 28th, 1858, to retain and deduct that amount from the mortgage debt; but the right to do so was strictly personal, and could not be exercised by the *terre tenants* of the mortgaged premises. Since the passage of the Act above referred to, it is not unlawful for a debtor to pay, or a creditor to receive more than six per cent. interest. When done in good faith and in the usual course of business other creditors of the debtor have no reason to complain. Nor have they any right to interfere in any case except where, under the guise of usury, there has been a collusive scheme between the debtor and his creditor to cheat and defraud other creditors of the former; and the mere fact that the debtor has paid or agreed to pay more than six per cent. interest is no evidence in such collusion. Those who allege that usury is a fraud upon them must do more than show the payment of interest in excess of the legal rate. That is a matter of which the debtor alone can complain: Second National Bank of Titusville's Appeal, 85 Pa. St., 528; Wheelock *v.* Wood, 93 Id., 298; Lening's Appeal, Id., 301.

It is contended, however, that when Riddle, one of the *terre tenants*, purchased the property at sheriff's sale subject to the mortgage, Dr. Graham, the mortgagor, for a good and valuable consideration, agreed to defend against the mortgage to the extent of the usurious excess; notwithstanding he subsequently refused to do so, the *terre tenants*, as *quasi* assignees of the right given by the statute to the debtor himself, might for him and in his name make the defence. This position is more plausible than sound. To permit the *terre tenants* to thus interpose the defence of usury, without the consent and against the will of the debtor, would be tantamount to decreeing specific performance of his agreement to defend against the usury.

The substance of Dr. Graham's agreement with Riddle was,

[McGee's Appeal.]

to assert the personal right given him by the statute, and thus reduce *pro tanto* the incumbrance, subject to which the defendants in error took the mortgaged premises. He not only refused to do so, but he subsequently went into court and confessed judgment for the full amount claimed by the mortgagee. Would a chancellor enforce specific execution of such a contract? If he would, it may be conceded that our courts of Common Pleas, invested as they are with equity powers, would permit a defence, in an action at law, the result of which would be practically the same; in other words, administer equitable relief in a common law form of action. But we have no doubt a chancellor, with a bill for specific performance of such a contract before him, would dismiss it, not only because there is a full and adequate remedy at law, but, for the further reason that contracts relating to personal chattels, stocks, securities, &c., are not enforceable specifically in equity. To this general rule there are but few exceptions, some of which are noted in McGowin *v.* Remmington, 12 Pa. St., 56, 61. Moreover, the evident purpose sought to be accomplished by the contract, and its effect upon other bidders at the sheriff's sale, as well as creditors of the mortgagor, were not such as to commend it to the special favor of a chancellor. But, aside from every other consideration, it is sufficient to say, that if the contract in question is worth anything, the defendant Riddle has an adequate remedy at law by an action on the contract for the alleged breach thereof; and, hence, he cannot be permitted to pursue a line of defence that would be tantamount, in its results, to a decree of specific performance against Dr. Graham, the mortgagor.

The view thus taken of the main question renders it unnecessary to notice other specifications of error, presenting questions which might otherwise become important.

Judgment reversed, and a *venire facias de novo* awarded.