## Sarah J. Nicholson's Appeal.

A debtor may pay or a creditor receive more than the legal rate of interest, and if done in good faith and in the usual course of business other creditors have no reason to complain.

Where a judgment index shows a judgment for a sum certain, with no rate of interest noted, a subsequent judgment creditor cannot, at the distribution of the proceeds of the sale of the judgment debtor's property, claim that the previous judgment shall be liquidated with interest at the rate of 6 per cent, instead of 8 per cent as the continuance docket showed was agreed upon by the parties thereto, when the same docket showed that numerous payments on account had been made and that the real sum due, including the 8 per cent interest, was less than the amount of the judgment shown by the judgment index; and hence the subsequent creditor was not misled to her injury by the omission to note the rate of interest on the judgment index.

(Argued October 12, 1887. Decided October 31, 1887.)

October Term, 1887, No. 224, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas of Armstrong County making distribution of the proceeds of sheriff's sale of the real estate of Thomas A. Foster. Affirmed.

Before the auditor appointed to make distribution, Ross Reynolds, Esq., Andrew Schall presented a claim founded upon a judgment entered against Thomas A. Foster at No. 368, June Term, 1876, revived by amicable sci. fa. at No. 159, June Term,

Cited in Allison's Estate, 4 Pa. Co. Ct. 550, 554.

NOTE.—For the right of others than the debtor to defend for usury, see note to Bonnell v. Smith, 4 Sad. Rep. 7. See also Selser's Estate, 141 Pa. 529, 21 Atl. 777; Reap v. Battle, 155 Pa. 265, 26 Atl. 439.

1881, for $1,050. The continuance docket entries were as follows:

Andrew. Schall }
       v.     } No. 368, June T., 1876, *d. s. b.* $1,050,
Thomas A. Foster. } int. from May 2, '76, at 8 per cent.

And now, to wit: J. B. Neale, Esq., by virtue of a warrant of attorney, appears for defendant and confesses judgment against him and in favor of plaintiff for the sum of $1,050, with interest at 8 per cent from the second day of May, 1876, costs of suit, release of errors and without stay of execution; also waiving inquisition and all exemption laws.

J. G. Henry, Proth'y.

May 17, 1877, receipt of plaintiff filed for $80, int. up to April 28, 1877. January 17, receipt of plaintiff filed for $80, dated April 1, 1878. March 18, 1880, receipt of plaintiff filed for $80, int. from April 1, 1879. August 31, 1881, receipt filed for $160, dated May 26, 1881. June 4, 1883, receipt of T. A. Foster filed for $240, dated April 8, '83.

Sci. fa.
Andrew Schall }
       v.     } No. 159, June Term, 1881.
Thomas A. Foster. }

Agreement for amicable sci. fa. to revive judgment No. 368, June term, 1876. And now April 24, 1881, agreement for an amicable scire facias to revive judgment No. 368, June term, 1876, and to continue lien of the same in favor of plaintiff and against defendant filed, see agreement signed and sealed by Thos. A. Foster, the defendant, dated April 21, 1881.

A. H. Stitt.

December 27, 1882, receipt of plaintiff filed for $100, dated August 5, 1882.

June 4, 1883, receipt filed for $240, dated April 8, 1883.

And July 14, 1885, by agreement filed, dated July 13, 1885, I hereby liquidate this judgment for the sum of $940.49, interest from July 13, 1885, with costs, same conditions as original judgment.                   A. H. Stitt, Proth'y.

The judgment index entries were as follows:

| Defend-ant | Plain-tiff | No. and Term | | , | Inter-est f'm | En-tered |
|---|---|---|---|---|---|---|
| Foster, Thos. A. | Andrew Schall | 368, June Term, 1876 | Debt 1,050 | | 2 May, 1876 | 2 May, 1876 |
| Deft. Foster, Thos. A. | Plff. Andrew Schall | No. 159 | | | Term June | Year 1881 |

Sarah J. Nicholson also presented a claim founded on a judgment entered against Thomas A. Foster at No. 150, June term, 1883.

Before the auditor, counsel for Mrs. Nicholson objected to the allowance of 8 per cent on the Schall judgment, because the judgment index did not give any notice of this to subsequent lien creditors. The auditor liquidated the Schall judgment with interest at the rate of 6 per cent only. Exceptions were taken to this ruling, which the court, WHITE, P. J., of the 40th judicial district, sustained, filing an opinion which was in part as follows:

It is claimed by Mrs. Nicholson, as a subsequent judgment creditor, that this liquidation, so filed after the sheriff's sale, should not control as fixing the amount of the Schall judgment for distribution, contending that the rights of those participating in the sheriff's sale are to be determined by their status, as shown by the record at the time of the sale. To this position we assent fully. Such is the doctrine reiterated, not long since, in Indiana County Bank's Appeal, 95 Pa. 500, a case impressed upon our recollection because of our personal interest in it, while at the bar.

Kindred to this principle is the rule that a subsequent encumbrancer, interested in determining how to bid, is not bound to look beyond the judgment docket for information as to the amount of the judgments against the debtor. Coyne v. Souther, 61 Pa. 458; Hance's Appeal, 1 Pa. St. 411; 15 Pa. 181, and other cases.

These principles are milestones along the currents of authority, regulating the rights of judgment creditors in distributing proceeds of sheriff's sales.

In Hance's Appeal, 1 Pa. St. 411, we have authority, how-

ever, that the subsequent judgment creditor may look beyond the judgment docket to correct a mistaken entry; thus, says Justice ROGERS, "a judgment creditor may be prejudiced, as is ruled in Crutcher v. Com. 6 Whart, 340, and M'Cleary's Appeal, 1 Watts & S. 299, by an entry in the judgment docket of less than the amount recovered, yet he cannot be benefited by an entry of more than is due. For so far as regards him, particularly when strangers are interested, the entry in the appearance docket must govern. A subsequent purchaser, or a judgment creditor, is not bound to look beyond the judgment docket; but he may do so to correct a mistaken entry."

Following this rule, it is correct that the liquidation of the Schall judgment on the 13th of July, after the sheriff's sale, if made for a greater amount than the debt and interest, shown by the judgment docket at the date of the sheriff's sale, would not be controlling on the auditor in making distribution. It was the auditor's duty, then, to take the judgments as they were on the judgment record at the time of the sheriff's sale. Borland's Appeal, 66 Pa. 472; Re Dyott, 2 Watts & S. 557.

It was his duty, also, to hear evidence from subsequent judgment creditors, if offered, that the Schall judgment was conclusive as to them, or that it had been paid or partly paid. Meckley's Appeal, 102 Pa. 543; Borland's Appeal, 66 Pa. 472.

No collusion, however, was intimated or charged here. The auditor could properly, however, turn to the continuance docket and discover the condition there as to credits and receipts. Observing these rules, what would the auditor discover as the condition of the judgment record at the date of the sheriff's sale? Precisely what we have stated above in our history of the record —a judgment entered May 2, 1876, for $1,050, interest from May 2, 1876; then subsequently a sci. fa. and judgment of general revival marked on the judgment record and filed April 22, 1881. Following the judgment record alone, at the time of the sale, the debt and interest appearing there exceeds in amount what Schall, the exceptant and plaintiff, now claims out of the fund in hand. But it is contended the amount for which the judgment was revived, in April, 1881, was not liquidated and carried to the judgment docket; hence, the revival, so far as notice to subsequent creditors, cannot avail to preserve the amount or original judgment and interest as entered on the judgment docket. The intelligent auditor seems, for the purposes

of this case, to have practically taken this view. We cannot agree with him. The issuing of a sci. fa. itself, within five years from original judgment, without a judgment at all on the sci. fa., would preserve the lien of the original judgment for five years from date of such sci. fa. Act of March 26, 1827; Re Fulton, 51 Pa. 209.

Then, again, when judgment is actually entered on the sci. fa. a general judgment of revival will be sufficient entry on the judgment docket. Says Fogelsville Loan & Bldg. Asso.'s Appeal, 89 Pa. 295: "The acts of assembly about reviving judgments do not require the amount of the debt and interest, then due, should be liquidated. A general judgment of revival for another period of five years is all that is prescribed." This is precisely what we have here, with a regular and prompt entry of it on the judgment docket.

When, then, the auditor was making distribution, the judgment docket at the time of the sheriff's sale showed the Schall judgment $1,050, with interest from May 2, 1876, with regular revival. As we have said, it was perfectly proper for the auditor to hear evidence of payments on account, and to refer to the continuance docket to discover any receipts or credits there, so as to liquidate the actual sum owing on the judgment at the date of sheriff's sale. By referring, then, to the continuance docket and the papers of the case, the receipts we have specified above are found. These receipts on the original judgment show the interest paid to May 2, 1881, at 8 per cent. Such payments were made long before the sheriff's sale, also before the entry of Mrs. Nicholson's judgment, which was entered to 150, June term, 1883, and the receipts filed.

Applying these receipts, then, to interest, as Foster, the defendant, intended and still desires, and crediting the receipts of August 5, 1882, and April 8, 1883, for $100 and $240 respectively, generally on the judgment, counting 6 per cent after May 2, 1881, which appears to be what the defendant, Foster, claims and Schall agrees was to be done, we have the balance due on Schall's judgment at the sheriff's sale (counting interest on the debt alone, without the interest on attorney's commission) $925.36. This is, indeed, less than appeared at the time on the judgment docket. But it is argued that since there was no note of the 8 per cent interest made on the judgment docket, subsequent judgment creditors are not required to look beyond the

judgment docket, and the judgment appearing there to bear up the legal interest, such subsequent creditors have a right to have the judgment liquidated on the sci. fa. at 6 per cent and the payments evidenced by the receipts to be applied accordingly.

The learned auditor took this view, saying: "A subsequent judgment creditor can claim that the sci. fa. on the Schall judgment shall be liquidated according to the terms of said judgment at its original entry on the judgment index, that is, with interest at 6 per cent." Under the circumstances and facts of the Schall judgment here, we cannot adopt this view. We must decide the precise question before us on its own facts and circumstances, unaffected by any probable conclusions from another state of things. We are not called on, here, to decide what effect an agreement in the entry of the judgment on the continuance docket, to pay 8 per cent interest, when the judgment docket only states interest generally, not mentioning rate, would have on the subsequent judgment creditors' right to resist the usurious interest because it would increase the amount of the judgment at the legal rate beyond what the judgment docket indicated at the time of the sheriff's sale. That question is not here. Nor are we embarrassed with the question suggested by the auditor, whether the court would, in any event, liquidate a judgment at an illegal rate of interest.

We may say that the reasoning of the latter cases rather indicates that where, as in a mortgage or judgment, there is a stipulation for interest in excess of the legal rate and the mortgagor or defendant does not defend against or object to the excess interest, the court will authorize the liquidation according to contract. Such appears to be the indication of the case of Bonnell v. Smith, 4 Sad. Rep. 7. There the mortgage provided for 7 per cent; the plaintiff in the sci. fa. claimed judgment at that rate; the defendant not resisting on that ground, a terre-tenant sought to raise the question of usury. He was not allowed to do so and judgment appears to have been entered on a calculation at the stipulated rate, Mr. Justice GREEN saying: "In the present state of the law, that defense [usury] is personal; and if the debtor does not choose to make it, one who is a stranger to the contract cannot."

Where, however, the defendant avails himself of such defense, no device, be it ever so ingenious, can deprive him of it. Harbaugh v. Uhlinger, 17 Pittsb. L. J. 502, and kindred cases.

But we need not speculate about these theories in this case. Here we have simply a case where, as we have seen, the judgment index showed at the sale an amount greater than the plaintiff claimed on the distribution; and when the auditor turns to the continuance docket, he discovers receipts for interest paid at 8 per cent. Now, in such a case, because the rate of 8 per cent is not the marked rate of interest on the judgment docket, must the appropriation of such payments by the parties to interest alone be disregarded and, at the instance of a subsequent judgment creditor, be applied on account in a calculation at 6 per cent? We think not. It is not a question of an application of payments the parties have not applied, for the parties here have applied them specially to interest. The only person here, then, who can complain at the rate of interest, actually paid, is Foster, the defendant. Such defense is personal. Bonnell v. Smith, 4 Sad. Rep. 7.

Mr. Justice STERRETT, in Stayton v. Riddle, 114 Pa. 464, 7 Atl. 72, is most explicit in this behalf when he says: "Since the passage of the act [1858] . . . it is not unlawful for a debtor to pay or a creditor to receive more than 6 per cent interest; when done in good faith and in the usual course of business, other creditors of the debtor have no reason to complain. Nor have they any right to interfere in any case except where, under the guise of usury, there has been a collusive scheme between the debtor and creditor to cheat and defraud other creditors of the former."

So, also, Miners' Trust Co. Bank v. Roseberry, 81 Pa. 313: "A subsequent judgment creditor, in the absence of fraud or collusion, has no standing before an auditor to complain of the payment of usury to a prior judgment creditor. Second Nat. Bank's Appeal, 85 Pa. 528; Lennig's Appeal, 93 Pa. 307."

The payment of interest at 8 per cent having been made by Foster, the defendant, to Schall on his judgment until May 2, 1881, we have here no power to disturb such payments at the instance of Mrs. Nicholson, a subsequent judgment creditor. We will, therefore, in liquidating the amount of Schall's judgment at the date of the sheriff's sale, take the interest, as shown by the receipts between the parties, paid to May 2, 1881, calculate interest from that date on the $1,000 to the sheriff's sale, deducting the receipts of $100 and $240 at their proper dates. The result of this liquidation would be an amount less than ap-

peared due and owing, as we have said, on the judgment docket on the original judgment.

We shall not notice the parol testimony, for we find nothing in it to affect the merits of the matter, different from what appeared upon the records referred to.

Another question is involved in this distribution. The money was paid into court on motion of the attorneys for lien creditors. The sheriff, however, claims his fees for poundage on the money, the same as if it had been paid to the plaintiff or his attorney. This was disallowed by the auditor, and exceptions have been filed in behalf of the sheriff to this disallowance. The matter of costs to officers is regulated by statute. Since the act of 1878, regulating the fees of officers, has been declared to be unconstitutional, the matter is remitted to the act of April 2, 1868, which provides: "Receiving and paying money to plaintiff or his attorney recovered upon any process, decree, or order of court for every dollar not exceeding $500, in addition to fee for executing writ, two cents, and for every dollar above $500, one half cent." Instead of paying the money over to the plaintiff or his attorney, the sheriff here paid it to court. Certainly such payment into court is not within the letter of the act allowing poundage to the sheriff for moneys collected on writs of execution. Is it within the reasonable spirit of the act? It will be observed that the reasonable intent of the legislature, in providing for an officer's fees, was to give him an allowance commensurate with his trouble and responsibility. When a sheriff pays money to a plaintiff or an attorney some trouble and risk of complaint by other interests is incurred. This should not be done without some compensation. But when a sheriff pays money into court, obedience to the order of the court, in that behalf, is merely perfunctory and no responsibility is incurred by such sheriff in the distribution. Then again, when such money is paid into court, the prothonotary, as the court's clerk, takes charge of it and is responsible for its custody, for which he is allowed a compensation by this same act of April 2, 1868; hence, we think the legislature intended only to allow the sheriff poundage for the acts specified in the statute referred to. We, therefore, think the auditor was right in disallowing the poundage here.

It seems that there is no decision of the supreme court upon this question; but we have been cited to the case of Terry v.

Gregg, 26 Pittsb. L. J. 94, decided by the learned president of the sixth judicial district. We concur with his reasoning in that case.

A decree was entered in accordance with this opinion, from which this appeal was taken.

*W. D. Patton,* for appellant.—Mrs. Nicholson was a subsequent encumbrancer, having loaned her money, and entered her judgment on April 9, 1883. That she was not bound to look beyond the judgment docket and that she was protected in acting on the faith of it is clearly shown by Coyne v. Souther, 61 Pa. 455, where it is said: "It is the creditor's duty to see that his judgment is properly entered thereon . . . if it is wrongly described as to amount or in any other material particular, third parties will always be protected in acting on the faith of it." See also Mehaffy's Appeal, 7 Watts & S. 200; Bear v. Patterson, 3 Watts & S. 233; Wood v. Reynolds, 7 Watts & S. 406; Mann's Appeal, 1 Pa. St. 24; and Hance's Appeal, 1 Pa. St. 408; and Ridgway's Appeal, 15 Pa. 177, 53 Am. Dec. 586.

It is further argued by the other side that no person but the defendant in the judgment can set up the defense of usury. This as an abstract principle of law and in the light of numerous authorities we cannot deny. But we say that this principle has no application here. Miners' Trust Co. Bank v. Roseberry, 81 Pa. 313; Second Nat. Bank's Appeal, 85 Pa. 528; Lennig's Appeal, 93 Pa. 307, cited by the learned judge in his opinion, all included the usury in the judgment.

Schall did not have his judgment rightly entered; he deceived the appellant and he must suffer the loss. Ridgway's Appeal, 15 Pa. 182, 53 Am. Dec. 586; Bear v. Patterson, 3 Watts & S. 237.

*Buffington & Buffington,* for appellee, presented no printed arguments, but relied upon the opinion of the court below.

OPINION BY MR. JUSTICE STERRETT:

In liquidating the Schall judgment the learned judge of the common pleas computed interest at the rate of 8 per cent until May 2, 1881, and thereafter at the rate of 6 per cent. Applying the payments made thereon accordingly, he found that the balance due, at the date of the sheriff's sale, was $925.36. This

appears to be in harmony with the understanding of the parties as evidenced by the record of the judgment itself, and receipts given on account of interest at the rate of 8 per cent.

As we said in Stayton v. Riddle, 114 Pa. 464, 7 Atl. 72, it is not unlawful, since the act of 1858, for a debtor to pay or a creditor to receive more than 6 per cent. When done in good faith and in the usual course of business, other creditors of the debtor have no reason to complain; nor have they any right to interfere in any case, except where, under the guise of usury, there has been a collusive scheme between the debtor and creditor to cheat and defraud other creditors of the former. There is nothing in the circumstances of this case to make it an exception to the general rule.

It is contended, however, by appellant that at the time she loaned the money for which her judgment was given, there was nothing on the judgment index to indicate that the debt (secured by the Schall judgment) was bearing more than 6 per cent interest; and inasmuch as she was not bound to look beyond the judgment index, she has a right to insist on liquidation of the judgment on the scire facias at the legal rate of interest. If she was misled to her prejudice, by relying on the judgment docket, there might be some force in this position; but she was not. She found there a judgment in favor of Schall for $1,050, with interest from May 2, 1876, duly revived within five years by sci. fa., but not liquidated. Computed, according to what there appeared, the debt would be considerably more than the balance found by the court.

On the other hand, if she referred to the record of the original judgment, as under the circumstances she should have done, for the purpose of ascertaining whether any credits were noted thereon, she would have seen that by the terms of the judgment it was bearing 8 per cent interest. In any aspect of the case it does not appear that appellant was misled to her injury by the omission to note the rate of interest on the judgment index; and hence she has no reason to complain of the action of the court below.

The subject is so elaborately considered in the opinion of the learned judge that further comment is unnecessary.

Decree affirmed and appeal dismissed, at the costs of appellant.