IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1890.

E. R. STAYTON, FOR USE, v. S. GRAHAM ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BUTLER COUNTY.

Argued October 22, 1890—Decided January 5, 1891.

(*a*) In a scire facias sur mortgage, the mortgagor not only declined to
defend, with terre-tenants holding subject to the mortgage, against usu-
rious interest in the amount claimed, but repudiated of record all de-
fence on his own part on account thereof, and, after judgment was
obtained against the terre-tenants, voluntarily confessed judgment to
the mortgagee:

1. The judgment against the terre-tenants having been reversed, the
mortgagor thereafter, by reason of his previous inconsistent statements
of record, was estopped from joining with the terre-tenants in proceed-
ings to open the judgment confessed, and from defending in a subse-
quent trial against the amount of the claim alleged to be usurious.

2. The doctrine of estoppel will be applied to prevent statements of re-
cord, abandoning existing rights, from operating as a fraud upon a
party who has been led to rely upon them, thereby changing his con-
duct and condition; and the defence of usury is no exception to the
rule: Wood's App., 1 Penny. 259; Marr v. Marr, 110 Pa. 60; Earnest
v. Hoskins, 100 Pa. 551, distinguished.

Before Paxson, C. J., Sterrett, Green, Clark, Wil-
liams, McCollum and Mitchell, JJ.

Vol. cxxxix—1 (1)

No. 172 October Term 1890, Sup. Ct.; court below, No. 108 June Term 1879, C. P.

On March 10, 1879, a scire facias sur mortgage was issued by E. R. Stayton, for use of W. W. Martin, now for use o' George S. Bryan, against Dr. Samuel Graham and Elean/ Graham. On March 29th, W. H. H. Riddle and Alexandei Mitchell, on affidavit of defence filed, were permitted to intervene and defend as terre-tenants of a portion of the premises bound by the mortgage. On April 24th, judgment was tendered by the defendants for $6,551, the amount of plaintiff's claim less $1,239, the usury set up in the affidavit of defence. On the same day, the plaintiff declined to accept the tender in full satisfaction, but elected to accept it as satisfaction pro tanto and to proceed to trial for the balance. A trial was had subsequently, and on April 27, 1886, a verdict rendered for the defendants. Judgment having been entered on the verdict, the plaintiff took a writ of error to No. 123 October Term 1886, Supreme Court, whereon the judgment on November 1, 1886, was reversed with a venire de novo: Stayton v. Riddle, 114 Pa. 464.

At the next trial, on November 4, 1889, the facts made to appear, briefly stated here, but fully stated in the opinion of the Supreme Court, were as follows:

After the plaintiff's election to proceed to trial for the balance claimed upon the mortgage, the terre-tenants alone then defending, an affidavit was filed nunc pro tunc counter to the affidavits of defence filed, wherein it was averred by Dr. Samuel Graham, the mortgagor, that he was " not asking a reduction of plaintiff's mortgage on account of usurious interest," etc., and subsequently, on August 16, 1880, Dr. Graham and wife, the mortgagors, voluntarily confessed judgment, to No. 173 September Term 1880, in favor of the plaintiff for the balance of the judgment then unpaid, to wit, $1,676.07. On March 5, 1881, the terre-tenants, or one of them, filed a bill in equity against Dr. Graham, and George S. Bryan, the use plaintiff, to enforce an agreement alleged to have been made with Graham, upon the faith of which, as was alleged, the terre-tenants had purchased the property subject to the mortgage, to wit, that $1,050 of the mortgage debt was usurious,

Charge of Court below.

and that Graham would defend against it. This bill, after, answer filed, was so proceeded in that in the end it was dismissed, on the ground of an existing adequate remedy at law. Next, after the verdict and judgment for the defendants, heretofore referred to, and its reversal in Stayton v. Riddle, 114 Pa. 464, to wit, on March 23, 1889, the death of George S. Bryan, the use plaintiff, was suggested, and S. S. Bryan, his executor substituted. Then, on May 7, 1889, the cause again being set for trial, Dr. Graham united with the terre-tenants in a petition, verified by his affidavit, setting out the actual existence of the usury in the mortgage, previously denied; and thereupon, after argument, the judgment confessed by Graham and his wife was opened to let in a defence; exception.[1]

At the close of the testimony, showing, inter alia, the foregoing facts, the court, McMICHAEL, P. J., charged the jury:

This case is really a question for the court. The plaintiff admits that the sum which he now seeks to recover was usury included in the mortgage given by Dr. Graham, held by plaintiff, and it is conceded that if Dr. Graham had set up the defence, which is now set up by him, in the inception of this case when the suit was brought, he might have been able to prevent a verdict against him and these other defendants for the amount claimed. The claim, however, is that he has done certain acts, so conducted himself in this litigation and with respect to this claim, that he now ought not to be permitted to set up this defence. On that subject there has been some evidence offered here, all of it, I believe, connected with this litigation. There is no dispute about the truth of the facts, as they are alleged in these sundry papers. Nobody denies that Dr. Graham has done just the things which the papers offered in evidence show him to have done. The question, then, is really one for the court to determine, whether those acts, about which there is no dispute, are such as should estop him from setting up this defence in this case. That question the court will reserve for future examination.

The plaintiff in this case asks the court to charge you:

1. That, although at the inception of the proceedings on this scire facias, the defendant, Dr. Graham, had a clear right to set up the defence of usury to the amount claimed by plaint-

iff in the present issue, yet, if the jury find that Dr. Graham refused to set up said defence, voluntarily confessed judgment therefor, refused, also, when the bill in equity was filed, to make such defence, and by reason thereof the plaintiff incurred . expenses to not less than $250, in litigating the defence set up by the terre-tenants, the other defendants, said Graham is now equitably estopped from setting up said defence of usury, and the verdict should be for plaintiff for $1,050, with interest from February 8, 1876, or $1,912, with costs of suit against defendants, to be levied de terris.

Answer : So far as your present duty is concerned, the court answers that point in the affirmative, but reserves the question as to whether the facts set up and referred to in the point are sufficient to estop the defendant, Graham, as mentioned in the point; with the right to enter a judgment for the defendant, notwithstanding the verdict, in case the court concludes that is the law. . . . ..

—A verdict was thereupon rendered in favor of the plaintiff for $1,912, subject, etc.

After argument of the reserved question, the court, Mc-MICHAEL, P. J., on March 3, 1890, filed an opinion, which after stating the facts proceeded :

The case, more concisely stated, is this : The plaintiff has expended $250 in trying to obtain a final judgment for the usury contained in the mortgage, against which the mortgagor made no defence, and, when requested by the terre-tenants to defend, he refused to do so, and voluntarily confessed judgment to plaintiff for the whole amount of the usury. Do these facts estop him from now setting up the defence of usury? If the defendant is estopped, then the court ought not to have opened the judgment which he confessed. All the facts which are now relied on as sufficient to estop him were then on the records and known to the court, except the precise amount expended by plaintiff in the litigation, and that precise amount is not material. It might have been more or less, without changing the law of the case.

Defendant's counsel claim that it is now too late to inquire whether the judgment was rightly opened; that that matter is res judicata; that all these matters of alleged estoppel have

Opinion of Court below.

been passed upon and determined by the opening of the judgment, and the defendant now stands as though no judgment had ever been entered against him. I do not think that position is entirely correct. If the court erred in opening the judgment, it is not too late to now correct that error. But I have not been convinced that it was error to open the judgment.

There was not then, and there is not now any doubt that the plaintiff obtained the confession of judgment for the purpose of concluding him and all the parties concerned, from setting up the defence of usury. It was a method, a device adopted in this case for the purpose of enabling the plaintiff to collect more than six per cent interest on the money he had loaned. It is perhaps true that the plaintiff did not intend to collect it from the defendant or his property, and that the defendant did not expect that he would personally have it to pay; but that does not make it any the less true that the purpose was to fix his personal liability to pay it, to put him in such a position that at law he could be compelled to pay it.

The line of decisions in Pennsylvania is long and unbroken that no such device, nothing short of actual payment of a judgment containing usury, will prevent or estop the defendant from setting it up as a defence. If it were definitely settled and determined that a lender could bring suit on the obligation given him by the borrower, and, after obtaining a confession of judgment in such suit, estop the borrower from showing usury because he had been put to trouble and expense in the matter, the usury laws would be very easily and constantly evaded, and the very expense which would serve as the ground for the estoppel would be added to and included in the usury. Our usury laws might as well not exist if a borrower's promise, his covenant, his deed, or his confession of judgment, coupled with some expense (the amount is not material) on the part of the lender, and incurred on the faith of such promise, deed, or confession, is to estop the borrower from setting up the defence of usury.

It is a mistake to suppose that the law of estoppel, which applies where one induces another, by some representation or conduct, to pay money which he would not otherwise pay, applies to.cases of usury where the party pleading the estoppel knows of the usury. He is not misled or deceived in any way. He knows that no matter what security he takes, whether note,

bond, mortgage, or judgment, still the borrower can successfully refuse to pay the usury. He loans his money in the first place, and he afterwards spends his money in trying to collect what he has loaned, with usury, relying on the borrower's promise or covenant that he will not plead the defence of usury. But he knows all the time that the borrower can, at any time, legally violate that promise or covenant and set up that defence, and he knows that the statute was passed for the very purpose of giving the borrower that right. He is not misled to his injury, but he injures himself by attempting to collect money which the statute says the borrower shall not be required to pay. . . . .

—Citing and considering Wood's App., 1 Penny. 259; Marr v. Marr, 110 Pa. 160, and Earnest v. Hoskins, 100 Pa. 551, the court proceeded:

It does not seem necessary to cite others of the numerous cases where judgments have been opened and the defendants let in to defend against usury. It is well settled that nothing short of a judgment, obtained in a proceeding which is actually adversary, or the payment of a judgment, is sufficient to prevent a defendant from defending against usury, when the plaintiff is the lender of the money or takes the obligation with knowledge of the usury. In our case, it is admitted that Mr. Bryan was the real lender of the money which Dr. Graham got, and knew of the usury.

A borrower can estop himself by a certificate of no defence, or other representation to a purchaser of his obligation who has no knowledge of any usury in it, from defending against usury, but the plaintiff who knows of or exacts the usury cannot estop himself by any amicable device short of payment of a judgment. The lender trusts the borrower's promise or undertaking, and the statute says the borrower need not keep that promise or undertaking. Then, he cannot be estopped by anything the lender may do, relying on such promise or undertaking.

Thus far, I have considered this subject as though no persons except the plaintiff and Dr. Graham were concerned in it, and that is the proper way to view it. The terre-tenants who are made defendants, have no right to any consideration in this controversy. Their lands are liable to the payment of the

Opinion of Court below.

amount unpaid on this mortgage. Whether they are sufficient to pay it, or whether it would be collected from those lands, or from the defendant on his bond, the court does not know. That they have no right to defend against the usury was decided by the Supreme Court in this case. Our only question is whether the defendant has now the right to make this defence. If he has, the terre-tenants may be benefited, but it is his rights and not their benefit that we are seeking.

The argument of the learned counsel for plaintiff, though he did not state it in terms, seemed to proceed on the theory that though Dr. Graham might yet defend, if the usury were to be collected from him, he should not now be permitted to prevent the plaintiff from collecting it from the terre-tenants. That position was well taken, if it appeared that Dr. Graham could not now be compelled to pay it if judgment were recovered against him, but the plaintiff failed to produce the evidence that Dr. Graham had been discharged in any bankruptcy proceedings, or is not now liable on his bond. As the case stands, Dr. Graham has a right to defend in his own interest, leaving out of view the interests of the terre-tenants.

He cannot be estopped any more by the facts that he confessed judgment and stood by while the plaintiff expended $250 in trying to collect this usury from the terre-tenants, than he would have been estopped if he had permitted the plaintiff to expend that sum, or more or less, in trying to collect the usury from himself. The fact that there are terre-tenants, in the case, in no way changes the rights of the plaintiff and defendants as between themselves.

The whole subject now considered, in this opinion, is in fact a review of the action of the court in opening the judgment confessed by Dr. Graham. I think enough has been said to show that the court did right in opening that judgment. If that be true, then Dr. Graham had a right to defend against the usury in the mortgage. It is admitted that the whole amount of the verdict is usury, with interest on that usury. It follows that the defence to the whole of the plaintiff's claim was complete.

Judgment is entered for the defendants, on the reserved question, notwithstanding the verdict.

—Thereupon, the plaintiff took this appeal, specifying that the court erred:

Opinion of the Court.

1. In opening the judgment confessed on August 16, 1880.[1]

2. In entering judgment in favor of the defendants, non obstante veredicto.

3, 4. In holding that Dr. Graham was not estopped by his conduct.

*Mr. James Bredin* (with him *Mr. J. M. Kennedy*), for the appellant.

Counsel cited: Herman on Estoppel, § 1012; Insurance Co. v. Mowry, 96 U. S. 547; Bigelow on Estoppel, 673.

*Mr. John M. Thompson* (with him *Mr. S. H. Piersol*), for the appellees.

Counsel cited: Duquesne Bank's App., 74 Pa. 438; Wood's App., 1 Penny. 259; Marr v. Marr, 110 Pa. 60; Earnest v. Hoskins, 100 Pa. 551.

OPINION, MR. JUSTICE STERRETT:

A brief outline of the facts is necessary to a proper understanding of the questions involved in this case.

In February, 1876, Dr. Graham and wife executed a mortgage for $7,000 in favor of the legal plaintiff, E. R. Stayton, who assigned the same to W. W. Martin, who subsequently assigned the same to George S. Bryan, whose executor now appears as beneficial plaintiff. Shortly afterwards, part of the mortgaged premises was levied on and sold by the sheriff, on an execution against Dr. Graham, one of the mortgagors. The mortgage having matured in 1879, a scire facias thereon was issued against the mortgagors, in which the use plaintiff claimed, as per affidavit filed, $7,000, with interest and attorney's commissions. Service of the writ and rule for affidavit of defence was accepted for the defendants by an attorney. In March, 1879, an affidavit of defence, alleging usury to the amount of $1,050, and interest thereon, was filed by W. H. H. Riddle and Alexander Mitchell, terre-tenants of part of the mortgaged premises, sold by the sheriff as aforesaid subject to the mortgage, and leave was granted them by the court to defend pro interesse suis. No affidavit was filed by Dr. Graham or his wife. On the contrary, an affidavit made by Graham was filed as a counter-affidavit for plaintiff to supplemental affidavit

filed by Riddle, one of the terre-tenants. In that affidavit, Dr. Graham, after denying the allegations of the terre-tenant, averred that he, "said affiant, is not asking a reduction of plaintiff's mortgage on account of usurious interest, or on any other account, and that there is no reason why W. H. H. Riddle and Alexander Mitchell, or any other person interested in the sale of affiant's property, upon the date referred to in the affidavits of defence on file, as purchasers, should be benefited by reduction of the amount of said mortgage to the extent claimed, or to any extent; that the agreement with the wife of affiant was abandoned, because W. H. H. Riddle refused to have payments made to the mortgagor," etc.

On August 16, 1880, Dr. Graham and wife appeared, and voluntarily confessed judgment on the scire facias sur mortgage for the balance then uncollected of the $7,000 and interest, to wit, $1,676, on which judgment, property, other than that purchased by Riddle and Mitchell, was levied on and sold.

About six months thereafter, Riddle, one of the terre-tenants, filed a bill against Graham, the mortgagor, and Bryan, the use plaintiff, alleging, inter alia, that, before he purchased part of the mortgaged premises at the sheriff's sale, Graham had agreed with him to defend against $1,050 of the principal of the mortgage held by Bryan, as usurious, if he (Riddle) would buy the property; that, in violation of the agreement, Graham refused to defend against the usury, and fraudulently conspired with Bryan, and confessed judgment on the scire facias for a sum which included all the usury, etc., and prayed that the judgment confessed by Graham and wife be vacated, and in the meantime proceedings be stayed; that he (Riddle) be permitted to defend against the scire facias, to the amount of the usury; and that Bryan be restrained from having any other or greater judgment than that already entered at No. 108 June Term 1879, which did not include the usury.

In his answer to the bill, Dr. Graham denied that he had agreed with Riddle to defend against usury as alleged in the bill; denied that Riddle was authorized to appear as attorney for him and his wife in the scire facias; alleged that Riddle had requested him to sign an affidavit of defence thereto, but he refused to do so, saying he had no defence to make to the

Bryan mortgage, and that the affidavit of defence filed by Riddle and Mitchell was without his consent; denied any collusion with Bryan as to the confession of judgment; averred that the amount thereof was the just balance due and owing on the mortgage; styled the plaintiff's bill of complaint unjust and unmeritorious, and prayed the court not to interfere with the collection of the judgment, which he of his own free will and accord had confessed; and, further, prayed the court to decree that said judgment remain valid and undisturbed, and that Bryan be permitted to collect the same from the mortgaged premises remaining unsold; that Riddle and others who intervened by leave of court be restrained from further interfering and defending against the scire facias, and that plaintiff's bill be dismissed. Bryan, the use plaintiff, also answered the bill fully, denying any collusion with Graham, or that he had ever requested him to confess the judgment; also denying that the terre-tenants had any right to set up the defence of usury, etc.

The master, in his report, recommended the dismissal of the bill, and it was accordingly dismissed by the court at plaintiff's costs, without prejudice to his rights at law. No appeal from that decree was ever taken, and hence all matters involved therein must be regarded as res judicata. The issue raised by the terre-tenants, who were erroneously permitted to intervene in the scire facias and defend pro interesse suis, was twice tried in the court below, and judgment therein for defendants was reversed by this court, for reasons which appear in the opinion reported in Stayton v. Riddle, 114 Pa. 464. That was substantially a final decision of every question then presented by the record, and all that remained to be done was to take a verdict in favor of the use plaintiff, for the amount claimed by him and distinctly admitted by the defendant Graham, who, for reasons set forth in his answer in the equity proceeding, had hitherto refused to interpose any defence.

The record having been remitted in November, 1886, the cause appears to have been continued from time to time until March, 1889, when the death of George S. Bryan, the use plaintiff, was suggested, and his executor substituted. Other counsel then appeared for plaintiff, and the cause was set for trial May 6, 1889. Then, for the first time, new light appears

Opinion of the Court.

to have dawned on Dr. Graham, and he united with the terre-tenants in a petition to open the judgment which, of his own "free will and accord," he and his wife nearly nine years before had confessed in favor of the plaintiff for a sum which he afterwards alleged, under oath, "was a just balance due and owing on the mortgage." This and other averments contained in his answer to the bill in equity, and in his counter-affidavit above referred to, are in striking contrast with the averments in his affidavit of May 6, 1889, attached to his petition to open the judgment. For reasons given by the learned judge in his opinion, no rule to show cause was granted; but, after argument of counsel, in which the facts above referred to were called to the attention of the court, the prayer of the petitioners was granted, and the judgment opened. The cause was then tried, and a verdict rendered in favor of the plaintiff for the amount claimed by him, subject to the opinion of the court on the questions of law raised by plaintiff's and defendants' points. Judgment was afterwards entered on the reserved questions in favor of defendants, and the case is now before us on plaintiff's appeal from the order opening the judgment, and the ruling of the court on the questions of law reserved.

The first specification of error is based on the exception taken to the order opening the judgment. The subjects of complaint in the remaining specifications are, the entry of judgment for defendants non obstante veredicto, and in not holding that the defendant Graham, by his conduct in refusing to make defence to the scire facias, within a reasonable time, etc., was estopped from doing so at this late day. It is unnecessary to consider them separately.

As already intimated, the right of the terre-tenants to intervene and defend pro interesse suis was definitively settled, adversely to them, in Stayton v. Riddle, 114 Pa. 464, and hence they alone had no right to be heard again. In view of the facts, outlined above, the conduct of Dr. Graham from the inception of the suit in 1879, to the presentation of his petition to open the judgment in 1889, was not such as to commend either the petitioner or his application to the favorable consideration of a chancellor. The position assumed by him, in his affidavit appended to the petition, is utterly inconsistent

Opinion of the Court.

with his former acts and declarations. If there is any virtue in the doctrine of estoppel, it ought to be applied in a case like this, in which the only party originally entitled to equitable relief not only persistently refused to avail himself of it at the proper time, but has manifested, throughout, a disposition to trifle with the administration of justice, and mislead others to their prejudice. It cannot be doubted that the conduct of Dr. Graham, in refusing to file an affidavit of defence, and in defending against the bill in equity, declaring in his answer thereto that he had "voluntarily and of his own free will" confessed the judgment for the "just balance due and owing on the mortgage," etc., was sufficient to induce, and did induce, the beneficial plaintiff to believe that his only controversy was with the terre-tenants of the mortgaged premises. Resting, as he doubtless did, in that belief, the plaintiff proceeded at very considerable expense, and, after years of litigation, successfully resisted the defence interposed by the terre-tenants, and placed himself in a position where his personal representative was about to realize the amount of his claim, which the mortgagor, Dr. Graham, years before, had in substance sworn was the balance justly "due and owing on the mortgage."

The doctrine of estoppel is applied to prevent statements of intended abandonment of existing rights from operating as a fraud upon a party who has been led to rely on them, and thereby change his conduct and alter his condition: Insurance Co. v. Mowry, 96 U. S. 547; Brink v. Insurance Co., 80 N. Y. 108, 112. The defence of usury is no exception to the rule. Waiver or estoppel may be urged against that, as well as against other matters of defence not involving legal or moral turpitude: Herman on Estoppel, § 1012. If Dr. Graham had interposed the defence of usury when, in the orderly course of judicial proceedings, he should have done so, the matter would have been promptly adjudicated, and litigation ended; but, with as full knowledge of all the facts as he ever had, he elected to do otherwise, and he should be bound thereby: Bigelow on Estop., 673. The cases relied on by the learned judge of the Common Pleas were doubtless properly decided on their own facts, but we think they are distinguishable from the present case, in the

manifest disposition that is here exhibited by the mortgagor to trifle with the due and orderly administration of justice.     Public policy forbids that such conduct should be encouraged.

It follows from what has been said that the petition to open the judgment should have been dismissed; but, inasmuch as a verdict was taken subject to the opinion of the court on questions of law reserved, this protracted litigation may now be ended, by reversing the judgment and entering judgment on the verdict; and that will be done.

> Judgment reversed; and judgment is now entered in favor of the plaintiff and against the defendants for $1,912, the amount found by the jury, with interest from November 4, 1889, the date of the verdict.

