550 A.2d 550

**Donald A. GILBERT, Appellee,**

v.

**Harry J. OTTERSON, d.b.a. Gettysburg Exterminating and Lawn Care Company, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1988.

Filed Oct. 11, 1988.

Reargument Denied Nov. 30, 1988.

484

Lovette M. Mott, Gettysburg, for appellant.

Jeffery M. Cook, Harrisburg, for appellee.

Before CIRILLO, President Judge, and WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

Donald Gilbert was employed as a pest control technician by Harry J. Otterson, t/a Gettysburg Exterminating & Lawn Care Company. On August 12, 1977, Otterson borrowed two thousand ($2,000.00) dollars from Gilbert, giving as evidence of the indebtedness a promissory note payable within six (6) months after the termination of Gilbert's employment by Otterson. The note also provided for the payment of interest on unpaid principal at the rate of fifteen (15%) percent per annum. Between 1978 and 1984, Otterson paid Gilbert the sum of three hundred ($300.00) dollars per year as interest, but the principal indebtedness was not reduced. In August, 1985, Gilbert left Otterson's

employ and started a competing business known as Fairfield Pest Control Corp.

On March 21, 1986, Gilbert recovered a judgment against Otterson for the principal of the note, as well as unpaid interest, before a District Justice. Otterson appealed to the Court of Common Pleas of Adams County where he defended against liability on grounds that the rate of interest contained in the note had been usurious. He also filed a counterclaim in which he alleged that Gilbert had tortiously interfered with existing and prospective contractual relations by soliciting Otterson's customers and had stolen trade secrets. The trial court determined that interest of fifteen (15%) percent was usurious and granted partial summary judgment by applying excessive interest payments in the amount of seven hundred twenty ($720.00) dollars in reduction of the principal indebtedness. Otterson was also granted leave of court to amend his counterclaim to include a demand for treble damages on account of the usury.

At trial, Otterson's evidence was that the loan had been made by Gilbert to help Otterson over a business slump so that Gilbert would not have to be laid off. The rate of interest, according to Otterson and his wife, had been set by Gilbert. Gilbert, on the other hand, testified that his employer had asked him to invest in the business and that Otterson had set the rate of interest. In any event, it is clear that the note was prepared by an attorney employed by Otterson. The trial court instructed the jury, inter alia, that estoppel was a defense to Otterson's claim for treble damages. The jury disallowed Otterson's claim for treble damages and returned a verdict in favor of Gilbert for the unpaid balance of the loan. Otterson filed post-trial motions in which he contended that the trial court had erred in charging the jury that estoppel was a defense to a claim for treble damages.[1] The trial court denied Otterson's motion

---

1. The trial court rejected Gilbert's argument that it should reverse its earlier grant of partial summary judgment in favor of Otterson for the usurious interest paid and hold that estoppel was also applicable to prevent the setoff. Gilbert has not appealed from this ruling.

for post-trial relief. On appeal, Otterson renews his argument that estoppel is not a defense to a claim for treble damages under the usury law.

With few exceptions, the maximum lawful rate of interest chargeable for the loan or use of money in an amount of fifty thousand ($50,000.00) dollars or less is six (6%) percent per annum. Act of Jan. 30, 1974, P.L. 13, No. 6, § 201, 41 P.S. § 201. Section 501 of the Act, 41 P.S. § 501, provides further that:

> When a rate of interest for the loan or use of money, exceeding that provided by this act or otherwise by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over such maximum interest rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of such debt providing the borrower or debtor gives notice of the asserted excess to the creditor.

Section 502 of the Act, 41 P.S. § 502, provides further:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges: Provided, That no action to recover such excess shall be sustained in any court of this Commonwealth unless the same shall have been commenced within four years from and after the time of such payment. Recovery of triple the amount of such excess interest or charges, but not the actual amount of such excess interest or charges, shall be limited to a four-year period of the contract.

■ The statute prohibiting usury is a part of the public policy of this Commonwealth, and it has been the practice of the courts in Pennsylvania not to allow the law to be evaded by circumvention. See: *Richman v. Watkins*, 376 Pa. 510, 515, 103 A.2d 688, 691 (1954); *Simpson v. Penn Discount*

*Corp.*, 335 Pa. 172, 175, 5 A.2d 796, 798 (1939); *Saunders v. Resnick*, 142 Pa.Super. 457, 461, 16 A.2d 676, 678 (1940). The defense of usury cannot be waived by the debtor. *Simpson v. Penn Discount Corp., supra; Olwine v. Torrens*, 236 Pa.Super. 51, 56, 344 A.2d 665, 668 (1975); 19 P.L.E. Interest and Usury § 25. See also: Section 408, Act of Jan. 30, 1974, *supra*, 41 P.S. § 408.

■■■ Whether an estoppel defense is available in an action for treble damages under section 502 of the Act is an issue of first impression in the appellate courts of this Commonwealth. However, in 1891, in *Stayton v. Graham*, 139 Pa. 1, 21 A. 2, the Supreme Court considered a similar issue under an earlier law and placed its imprimatur on the use of the estoppel defense. The Court there said that the "doctrine of estoppel is applied to prevent statements of intended abandonment of existing rights from operating as a fraud upon a party who has been led to rely on them, and thereby change his conduct and alter his condition. . . . The defen[s]e of usury is no exception to this rule." *Id.* at 12, 21 A. 2 (citations omitted). See generally: 17 P.L.E. Interest and Usury § 25. Courts in other jurisdictions have concluded that a borrower who has initiated, or been guilty of fraud in contributing to, a usurious transaction may not claim statutory penalties for usury. See: *Massie v. Rubin*, 270 F.2d 60 (10th Cir.1959); *Short v. Skipwith*, 1 Brock 103, F.Cas. No. 12809 (C.C.Va. 1806); *Re Pillon–Davey & Associates*, 52 B.R. 455 (Bankruptcy N.D.Cal.1985); *McClung v. Saito*, 4 Cal.App.3d 143, 84 Cal.Rptr. 44 (1970); *Builder's Bond & Mortgage Co. v. Bickley*, 262 Ill.App. 603 (1931). See also: *Perry v. Shelby*, 196 Ark. 541, 118 S.W.2d 849 (1938); *Nikkel v. Lindhorst*, 85 Colo. 334, 276 P. 678 (1929); *Nelson v. Dorr*, 239 Minn. 423, 58 N.W.2d 876 (1953); *Schanz v. Sotscheck*, 167 App.Div. 202, 152 N.Y.S. 851 (1915); *U.T. Hungerford Brass & Copper Co. v. Brigham*, 47 Misc. 240, 95 N.Y.S. 867 (1905). See generally: Annotation, Borrower's Initiation of, or Fraud Contributing to, Usurious Transaction as Affecting Rights or Remedies of the Parties, 16 A.L.R.3d 510.

We have determined to follow those decisions which hold that estoppel is a defense to a claim for treble damages. This is the better view and is consistent with the earlier decision of the Supreme Court of Pennsylvania in *Stayton v. Graham, supra.* A borrower who initiates an excessive interest rate and induces an uninformed lender to accept a rate higher than that permitted by statute will not be permitted to benefit by his own wrong by recovering treble damages. The merit in such a rule can readily be understood when it is applied to the facts of the instant case. Appellant-employer, in order to induce his employee to lend him two thousand ($2,000.00) dollars, promised to pay interest at the rate of fifteen (15%) percent to his employee so long as the principal of the loan remained unpaid. Repayment was not necessary so long as appellee continued in appellant's employ. The loan was evidenced by a note prepared by an attorney employed by appellant-employer. Under these circumstances, the trial court did not err when it instructed the jury that estoppel was a defense to an action by the debtor for treble damages.

The trial court refused to submit to the jury Otterson's claims that Gilbert had intentionally interfered with Otterson's existing and prospective contractual relations with his customers. Otterson contends that this was error.

■ After Gilbert left Otterson's employ and started his own business, he solicited some of the customers with whom he had become acquainted while in Otterson's employ. There was no evidence, however, that he had caused any customer of Otterson to breach an existing contract. Therefore, the trial court properly refused to submit to the jury Otterson's counterclaim for intentional interference with existing contractual relations.

■ In order for Otterson to prove a cause of action for interference with prospective contractual relations, it was essential for him to prove that Gilbert's conduct was improper. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978). As a general rule, "[o]ne who intentionally causes a third person not to

enter into a prospective contractual relation with another who is his competitor ... does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other."

Restatement (Second) of Torts, § 768. The effect of this rule is more fully explained in comment (b) as follows:

The rule stated in this Section is a special application of the factors determining whether an interference is improper or not, as stated in § 767. One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services. The only limitations upon this are those stated in Clauses (a) to (d).

The courts in Pennsylvania have adopted this view. In *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 162 A.2d 370 (1960), the Supreme Court said:

"The rule is quite clear that the solicitation of customers and use of customers lists is permissible unless there is a breach of an express contract or violation of some confidence. **There must be some element of fraud or trade secrecy involved** ...

... 'But equity is not protecting mere names and addresses easily ascertainable by observation or by reference to directories.' "

*Id.,* 400 Pa. at 359, 162 A.2d at 372–373 (emphasis by Supreme Court), quoting *Wiegand Co. v. Trent Co.,* 122 F.2d 920 (3d Cir.1941).

In the instant case, there was no evidence of a restrictive covenant which could have been enforced to prevent Gilbert from competing with Otterson upon termination of the employment relationship. Therefore, Gilbert could properly compete with Otterson after he was no longer employed by him.[2] See: Restatement (Second) of Agency § 393, comment e. This right to compete included the right to divert business from Otterson. There was no evidence that Gilbert had exceeded the privilege of competing with his employer by tortiously interfering with the prospective contractual relations of his employer. The trial court did not err when it refused to submit to the jury Otterson's claim for intentional interference with his prospective contractual relations.

The trial court did submit to the jury the claim that Gilbert had been guilty of violating Otterson's confidence by stealing trade secrets consisting of his customer lists. The jury, however, returned a verdict which denied recovery. Otterson moved post-trial for the entry of judgment n.o.v., but his motion was denied. He argues on appeal that the denial of his motion was error. We disagree.

"In asserting [a] ... right to protection against the misuse of a trade secret, the burden is on the plaintiff to show that it held a trade secret and that the defendant had misappropriated it in violation of a confidential relationship." *Fidelity Fund, Inc. v. DiSanto,* 347 Pa.Super. 112, 121, 500 A.2d 431, 436 (1985), citing *Spring Steels, Inc. v. Molloy, supra; Pittsburgh Cut Wire Co. v. Sufrin,* 350 Pa.

---

2. Appellant did not contend or offer evidence to show that appellee had solicited his employer's customers before terminating his employment. Although Gilbert had told several customers of his intention to terminate his employment and go into business for himself, the evidence does not show that he then solicited their business. Appellant's argument on appeal is that appellee engaged in unfair competition by soliciting his employer's customers after terminating the employment relationship while new people were being trained to take appellee's place.

491

31, 38 A.2d 33 (1944). The jury in this case could find that Otterson failed to meet this dual burden as to customers who had been contacted by his former employee. It could find that the identity of Otterson's customers did not constitute a trade secret—they were not the product of any special work on the part of Otterson—and that Gilbert had not misappropriated such information in violation of a confidential relationship. See: *Spring Steels, Inc. v. Molloy, supra; Fidelity Fund, Inc. v. DiSanto, supra.*

 Finally, appellant contends that the trial court erred when it allowed Gilbert to call four witnesses at trial who had not been listed in Gilbert's several pre-trial memoranda. These witnesses were not expert witnesses but fact witnesses. Although appellant argues that a local rule required that witnesses be disclosed prior to trial, he does not argue that the local rule required the court to preclude their testimony. The sanction, therefore, was discretionary with the trial court. To preclude the relevant testimony of a witness is a drastic step which should not be taken except for weighty reasons. See: *Feingold v. Southeastern Pennsylvania Transportation Authority,* 339 Pa.Super. 15, 19, 488 A.2d 284, 287 (1985), *aff'd,* 512 Pa. 567, 517 A.2d 1270 (1986). In this case we find no abuse of the trial court's discretion.

JUDGMENT AFFIRMED.