**CORNERSTONE SYSTEMS, INC.**
a Tennessee corporation,
Appellant–06–4200

v.

KNICHEL LOGISTICS, L.P. a Pennsylvania limited partnership; Knichel Management Corporation a Pennsylvania corporation; William R. Knichel an individual; Israel Barkley an individual; Kandace Barkley an individual; Justin Barkley an individual; Tanya Ekama an individual; Jessica Grant an individual; Rachel Grant an individual; Kristy Knichel an individual; William Knichel, Jr. an individu-

al; Scott Knechtel an individual; Chad Myers an individual; Jennifer Sapiena an individual, Appellants–06–4114.

Nos. 06–4114, 06–4200.

United States Court of Appeals,
Third Circuit.

Argued Oct. 24, 2007.

Filed: Nov. 30, 2007.

Paul D. Burke (Argued), Sharon M. Menchyk, Sherrard, German & Kelly, Pittsburgh, PA, Attorneys for Plaintiff–Appellee.

Ronald L. Hicks, Jr. (Argued), Joshua R. Lorenz, Meyer, Unkovic & Scott, Pittsburgh, PA, Attorneys for Defendants–Appellants.

Before: SLOVITER, CHAGARES and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

The parties to this business dispute attempt to make a mountain out of a molehill. When Appellant William R. Knichel (Knichel) fell out with Appellee Cornerstone Systems, Inc. (Cornerstone) and decided to go his own way, Cornerstone resisted. Though Cornerstone had every right to attempt to maintain its business relationships in light of Knichel's departure from the company, it went much further. Cornerstone sued not only Knichel and his new company, but also its officers and employees, alleging a congeries of dubious claims, including false designation/false description under the Lanham Act and state common law claims for replevin, misappropriation of trade secrets, breach of the duty of loyalty, and tortious interference with contract. After Cornerstone caught the proverbial tiger by the tail, Knichel responded with several questionable counterclaims of his own for tortious interference, unfair competition, defamation and commercial disparagement, breach of contract and attorney's fees.

After extensive discovery and briefing, Knichel and Cornerstone filed cross motions for summary judgment, which the District Court granted in their entirety. We understand the District Court's decision because our review leads us ineluctably to the conclusion that this dispute

should have been resolved by the marketplace rather than the judicial system. Yet the battle rages on with Knichel's appeal, in which he claims that the District Court erred on all claims. In perhaps a glimmer of counseled restraint, Cornerstone cross-appealed only the District Court's summary judgment on its Lanham Act and breach of fiduciary duty claims.

## I.

"Our standard of review over the District Court's grant of summary judgment is plenary, and we apply the same standard that the District Court should have applied." *In re Color Tile Inc.,* 475 F.3d 508, 512 (3d Cir.2007). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Andreoli v. Gates,* 482 F.3d 641, 647 (3d Cir.2007) (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). Under Rule 56 of the Federal Rules of Civil Procedure, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (citation omitted).

## II.

Because we write for the parties, we recite only the facts essential to our decision. Cornerstone is an intermodal marketing company (IMC) that arranges freight shipments within the United States. Cornerstone hired William Knichel in 1997, largely because he had been involved in the transportation industry for many years and was able to bring a number of customers with him. Knichel had especially strong contacts in the rice industry in Northern California, and claims to be known as "the Rice King." Under a written employment agreement between the parties, Knichel's commissions varied with volume and were "based on the average of the monthly net profit for each six month commission period."

In 2000, Cornerstone agreed to make Knichel an independent agent pursuant to a written agency agreement (Agreement). The Agreement provided that Knichel would receive "60% commissions on all shipments billed through Cornerstone" and either party could terminate the agency relationship on 30 days notice. The Agreement did not include a non-compete or non-disclosure/confidentiality agreement. Knichel continued to work exclusively for Cornerstone and was never an independent agent for any other company during this time.

Shortly after becoming an independent agent, Cornerstone asked Knichel to assist with the operations of two Cornerstone sales associates, William Clark and Robert French. In exchange, Knichel was entitled to 30% of the profits generated by Clark and French. In late 2002, Knichel claims to have discovered "accounting irregularities" in the calculation of the profit, which adversely affected his compensation. Knichel requested Cornerstone to remedy this problem by restoring lost commissions. Cornerstone refused and its Chief Executive Officer, Rick Rodell, wrote that the company should "deep six [Knichel] because he sure is going out of his way to build a case for leaving."

Knichel ultimately decided to leave on his own terms, and so informed Cornerstone by letter dated March 28, 2003 that set April 27, 2003 as the effective termination date. Knichel then began to make arrangements to establish his own IMC (Knichel Logistics) and on April 11, 2003 Knichel informed Cornerstone customers with whom he had relationships that he was starting his own company. In addition, Knichel asked those customers to complete a form letter requesting shippers

to replace Cornerstone and "use Knichel Logistics on all future shipments." The form letter also stated, "I understand that this will prevent Cornerstone Systems from participating in any future business under these quotes." Knichel received several completed replacement letters from customers prior to the termination of his agency relationship with Cornerstone, but did not submit them to freight shippers until after the agency terminated.

Not surprisingly, after hearing of Knichel's April 11 letter, Cornerstone contacted its customers that Knichel was servicing and urged them to continue their relationship with Cornerstone. Cornerstone also redirected mail and phone calls from Knichel's Pittsburgh office to Cornerstone's Memphis office.

## III.

After reviewing the briefs filed by the parties, hearing oral argument, and independently reviewing the record, we find that the judgment of the District Court was largely correct. We agree with the District Court that a competitor is only liable for tortious interference if it uses "predatory" tactics that would form an independent basis of liability, such as antitrust, breach of fiduciary duty, physical violence, fraud, and frivolous civil suits or criminal prosecutions. *See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 388 (3d Cir. 2004). Under this standard, none of Cornerstone's alleged conduct was actionable. Likewise, Cornerstone did not engage in any deceptive marketing, infringement of trademark or other intellectual property interests, misappropriation of trade secrets, violations of federal or state statutes, or any other acts that would "substantially interfere with the ability of others to compete on the merits of their products." *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 (1995) and cmt. g. We agree with the District

Court's breach of contract analysis, which limits Knichel's claims to well below $75,000 in damages under the employment and agency agreements. We also agree that there is no basis in the record for an award of counsel fees against Cornerstone.

■ As for Cornerstone's Lanham Act claim, we find that the District Court did not err in granting Knichel summary judgment because Cornerstone did not produce sufficient evidence of "secondary meaning" under the factors set forth in our opinion in *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277 (3d Cir.1991).

## IV.

Despite our substantial agreement with the District Court, we find two errors that require remand. First, the District Court erroneously concluded that Knichel's April 11 letter to Cornerstone's customers did not create a material issue of fact with respect to Cornerstone's claim for breach of fiduciary duty. Second, the District Court improperly granted summary judgment *sua sponte* with respect to Knichel's claim for defamation and commercial disparagement.

Under Pennsylvania law, an agent "is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein." *Spring Steels, Inc. v. Molloy*, 400 Pa. 354, 162 A.2d 370, 375 (1960) (citing RESTATEMENT (SECOND) OF AGENCY § 393 cmt. e). Because Knichel had not made improper use of trade secrets or confidential information, and because there was no evidence that Knichel had usurped any business opportunity of Cornerstone's prior to his termination, the District Court found that Cornerstone's claims failed as a matter of law. In so holding, however, the District Court overlooked a critical portion of comment e to § 393 of the Restatement of

Agency. Comment e specifically states that an agent "is not, however, *entitled to solicit customers* for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." RESTATEMENT (SECOND) OF AGENCY § 393 cmt. e. (emphasis added). Pennsylvania courts and federal courts sitting in diversity have made it clear that an agent may not solicit customers on behalf of a competitor while still employed as an agent. *See, e.g., SHV Coal, Inc. v. Cont'l Grain Co.*, 376 Pa.Super. 241, 545 A.2d 917, 921 (1988), *rev'd on other grounds* 526 Pa. 489, 587 A.2d 702 (1991) (finding agent breached fiduciary duty by diverting contracts to competing business from which he had just accepted an offer of employment).

Thus, a genuine issue of material fact exists as to whether Knichel's letter to Cornerstone's customers, sent over two weeks before his agency terminated, constituted a solicitation of business on behalf of his new company. Indeed, he explicitly asked these customers to take affirmative steps to "replace" Cornerstone with Knichel Logistics and acknowledge that Cornerstone could not participate in any future business. This suggests that Knichel's letter was more than a simple notification to customers that he was leaving Cornerstone and establishing his own business, as he is permitted to do under Pennsylvania law. *See Gilbert v. Otterson*, 379 Pa.Super. 481, 550 A.2d 550, 554 n. 2 (1998) (informing customers of intention to terminate employment and start independent business without evidence of actual solicitation not improper).

## V.

The District Court granted Cornerstone summary judgment on Knichel's defamation claim on its own initiative. Although a district court may grant summary judgment *sua sponte* in limited circumstances, we have generally required district courts to give prior notice and an opportunity to oppose summary judgment by presenting relevant evidence. *Chambers Dev. Co. v. Passaic County Util. Auth.*, 62 F.3d 582, 584 n. 5 (3d Cir.1995). This is consistent with Rule 56(c), which requires a minimum of ten days notice to the nonmoving party. Although we have usually "insisted on strict compliance with the procedural requirements of Rule 56(c)," *Brooks v. Hussman Corp.*, 878 F.2d 115, 116–17 (3d Cir.1989), we have also recognized a narrow exception where (1) the point at issue is purely legal; (2) the record was fully developed; and (3) the failure to give notice does not prejudice the party. *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 219 (3d Cir.2004). In these situations, the plaintiff "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson*, 355 F.3d at 223–24 (discussing elements of adequate notice).

In its motion for summary judgment, Cornerstone argued that Knichel's defamation claim was barred by Pennsylvania's one-year statute of limitations. The District Court rejected this argument, finding that the defamation counts related back to the date of the original complaint under Rule 15(c)(2). The District Court then proceeded to evaluate and dismiss Knichel's defamation claims on the merits, despite acknowledging that "Cornerstone does not specifically argue that Knichel's claims of defamation and business disparagement lack merit." Neither party addressed the merits of the defamation claim in its briefing and the District Court never indicated to the parties that it was considering a grant of summary judgment on the merits.

Under these facts, the *Gibson* exception to the notice requirement of Rule

56(c) is not applicable. As counsel for Knichel suggested at oral argument, the basis of the District Court's dismissal was not a purely legal question. Rather, it found that the statements were not defamatory because they were statements of "mixed opinion," *i.e.*, capable of defamatory meaning only if they are "reasonably understood as implying the assertion of the existence of undisclosed facts about the plaintiff that must be defamatory in order to justify the opinion." It is also clear that the District Court's failure to provide notice prejudiced Knichel, whose counsel indicated at oral argument that he could have gathered a number of affidavits from the customers and vendors to whom the allegedly defamatory statements were made, addressing the precise nature of the statements and their interpretations of those statements. Accordingly, the District Court erred when it failed to provide Knichel with notice and an opportunity to respond.

## VI.

Although we have found two errors, we conclude by exhorting the parties to resolve this case amicably. We recognize that each side is left with one claim, but we note that the record demonstrates that even were the parties to prove liability on the extant claims, it appears that damages, if any, would be dwarfed by the legal fees the parties would incur were they to proceed forward. For the reasons stated, we reluctantly vacate the District Court's grant of summary judgment only with respect to Cornerstone's claim for breach of fiduciary duty and Knichel's claim for defamation and commercial disparagement, but will affirm the judgment below in all other respects.