J-A08045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| EDWARD AND ROSE MAGDITCH, INDIVIDUALLY AND AS CO-ADMINISTRATORS OF THE ESTATE OF TRAVIS MAGDITCH, DECEASED, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : : | |
| DENNIS ERIK VONKIEL, D.O., PRIMECARE MEDICAL INC., LEHIGH COUNTY, AND EDWARD SWEENEY, INDIVIDUALLY AND AS DIRECTOR OF CORRECTIONS FOR LEHIGH COUNTY, | : : : : : : : | |
| Appellees | : | No. 2623 EDA 2015 |

Appeal from the Judgment Entered August 13, 2015
in the Court of Common Pleas of Lehigh County
Civil Division, at No(s): 2012-C-5428

BEFORE:  BOWES, DUBOW, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED JUNE 08, 2016**

Edward and Rose Magditch (collectively the Magditches) appeal from the judgment entered against them on August 13, 2015.  We affirm.

The trial court summarized the pertinent factual and procedural history of this action as follows.

> On January 5, 2012, Travis Magditch [(Decedent)] died while incarcerated in the Lehigh County Prison.  [The Magditches] commenced this action on December 28, 2012, by [c]omplaint filed against Defendants Lehigh County, Edward Sweeney (Sweeney), as Director of Corrections for Lehigh County and Individually, [Dennis Erik] Von Kiel [D.O], and PrimeCare [Medical Incorporated].  The [c]omplaint alleged theories of negligence against Von Kiel and PrimeCare's agents

* Retired Senior Judge assigned to the Superior Court.

arising from the failure to properly assess and treat [Decedent's] asthma at the Lehigh County Prison, as well as the failure to have appropriate policies and procedures in place at the prison regarding prisoners with asthma. In addition, [the Magditches] asserted civil rights claims against all [d]efendants for failing to provide constitutionally required necessary medical treatment.

Prior to trial, upon consideration of [d]efendants' motions for summary judgment, judgment was entered in favor of [] Lehigh County and Sweeney as a matter of law. Subsequent to [the trial court's] ruling [the Magditches] withdrew their civil rights claims against Von Kiel and PrimeCare. Accordingly, only the negligence cause of action remained against [] Von Kiel and PrimeCare [(hereinafter collectively referred to as Defendants)] at the time of trial.

Trial commenced[1] on March 23, 2015 and concluded on March 27, 2015, when the jury returned a verdict in favor of Defendants. Specifically, the jury found that PrimeCare was negligent, but that said negligence was not a factual cause in bringing about [Decedent's] harm.

Trial Court Opinion (TCO), 7/31/2015, at 1 (citations omitted).

The Magditches filed timely post-trial motions, which were denied by the trial court. Judgment was entered and this timely filed appeal followed. Both the Magditches and the trial court have complied with the directives of Pa.R.A.P. 1925.

On appeal, the Magditches present for our consideration the following issue: "Did the trial court abuse its discretion by precluding witness

---

[1] Prior to trial, Defendants filed a motion *in limine* to disallow the testimony of Dennis Cardano (Cardano), who was an inmate at the Lehigh County Prison when the incident resulting in Decedent's death occurred. The Magditches informed Defendants ten days prior to trial of their intention to call Cardano, and Defendants filed a motion soon thereafter. The trial court granted Defendants' motion, and precluded Cardano from testifying, which is the central issue of the instant appeal.

[Cardano] from testifying on critical issues of causation… [?]" Appellant's Brief at 4.[2]

"As abuse of discretion is the standard of review in this matter, [it is this Court's] function to determine whether the trial court's decision to exclude [] testimony [] constituted unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Grady v. Frito-Lay, Inc.**, 839 A.2d 1038, 1046 (Pa. 2003). Such decisions "are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law." **Cimino v. Valley Family Med.,** 912 A.2d 851, 853 (Pa. Super. 2006) (citations omitted).

To preclude the relevant testimony of a witness is a drastic step which should not be taken except for weighty reasons. **Gilbert v. Otterson**, 550 A.2d 550, 555 (Pa. Super. 1988). "In determining whether or not a witness should be precluded for failure to comply with discovery rules" a court must consider the following factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of cases in the court, (4) bad faith [or] willfulness in failing to comply with the court's order.

---

[2] We note that on appeal, the Magditches do not challenge the trial court's denial of a continuance.

***Smith v. Grab***, 705 A.2d 894, 902 (Pa. Super. Ct. 1997) (citing ***Linker v. Churnetski Transp., Inc.,*** 520 A.2d 502, 503 (Pa. Super. 1987)). "In the absence of bad faith or willful disobedience of the rules, the most significant considerations are the importance of the witness's testimony and the prejudice, if any, to the party against whom the witness will testify." ***Linker*** 520 A.2d at 504.

Keeping the above standards in mind, we now address the Magditches' claim on appeal. The Magditches contends that Cardano's testimony was significant, as it went to the crucial issue of causation, which was highly contested by the parties. Magditches' Brief at 24-25. The Magditches aver the trial court "abused its discretion on multiple grounds" when it disallowed Cardano's testimony and "[t]he trial court's analysis was wrong in several aspects." *Id.* at 25 and 32.

Specifically, the Magditches argue that Cardano's testimony should not have been a surprise, since his name appeared on a list of inmates, to which the Defendants had access. Further, the Magditches contend that defense counsel failed to mitigate any surprise caused by the late addition of Cardano by waiting several days after receiving the information before filing their motion *in limine. Id.* at 26-27. The Magditches note that the trial court acknowledged that the late discovery of Cardano and his testimony was not a "clever litigation tactic" and the trial court had tools available to remedy the situation, including ordering depositions to be conducted, or

granting a continuance, which Defendants themselves had requested. *Id.* 25-28. The Magditches aver that the trial court's denial of a continuance "combined with Defendants' inaction created the predicament that led the trial court to preclude Cardano's testimony." *Id.* at 28.

In its 1925(b) opinion, the trial court began its discussion by providing additional background regarding the Magditches' late addition of Cardano to its witness list. The trial court stated the following:

> Per [o]rder dated February 6, 2014, and upon stipulation of the parties, the discovery deadline expired on May 19, 2014.
>
> On February 13, 2015, [the Magditches] filed their Pre-Trial Statement. [Cardano] was not identified as a witness. Further, no witness was identified that had knowledge of [Decedent] experiencing asthma-like symptoms or having asked for help prior to his death. No such facts were provided in the "Facts Giving Rise to Liability."
>
> On March 13, 2015, ten days before the start of trial, [the Magditches'] counsel faxed defense counsel and the court an Amended Pre-Trial Statement listing [Cardano] as a trial witness. The substance of his testimony was not provided, and the facts giving rise to liability were not amended. Contrary to [the Magditches'] assertion in their post-trial memorandum, the amended pre-trial statement was never filed of record with the court.
>
> Defendants filed a motion *in limine* to preclude the testimony of Cardano.
>
> On March 18, 2015, [the Magditches'] counsel verbally provided defense counsel with an offer of proof as to Cardano's proposed testimony. As a result, on March 19, 2015, Defendants filed a supplemental motion *in limine* to preclude the testimony of Cardano and/or request a continuance of the trial.
>
> [The Magditches] responded to Defendants' first motion *in limine* on Friday, March 20, 2015; admitting that [the

Magditches] have not produced any sort of indication as to what Cardano will state at trial and further responding that ["the Magditches did] not know what Cardano will state at trial. Even if [the Magditches] could predict [Cardano's] testimony, [the Magditches] are not aware of any rule or case law requiring [p]laintiffs to inform [d]efendants of what these fact witnesses may say at trial."

TCO, 7/31/2015, at 11-12 (internal citations removed).

In reviewing the necessary factors, the trial court offered the following analysis:

> In examining the first factor as set forth in **Grab**, we must consider the prejudice or surprise to Defendants, the party against who[m] the excluded witnesses would have testified. As to surprise, there can be no question that Defendants were surprised by the late offer to allow Cardano's testimony at trial. Discovery in this case was lengthy. The discovery deadline had been extended and expired and the deadline for pre-trial statements had expired. No witness was identified that would have knowledge of [Decedent] exhibiting asthmatic symptoms or asking for and not receiving medical help.
>
> Cardano had been identified as an inmate in a discovery document, which was provided by Lehigh County and included a list of approximately 100 inmates in Housing Unit 2A during [Decedent's] time of incarceration. Defendants were provided correspondence between counsel for Lehigh County and Sweeney and [the Magditches'] counsel, documenting [the Magditches'] answers to interrogatories in which [the Magditches] admit that they were unaware of a witness and did not intend to call a witness at trial to support the allegations that [Decedent] requested help and did not receive assistance from employees of Lehigh County Prison on the evening of January 4, 2012. Defendants were entitled to rely on, and did, in fact, rely on [the Magditches'] representations, even if made to another party, when preparing for trial. Learning that [the Magditches] intended to call a witness who would testify that on the evening of January 4, 2012, [Decedent] was exhibiting asthmatic symptoms, and that both the witness and [Decedent] requested help but did not receive any, is the epitome of surprise.

In addition, Defendants were unfairly prejudiced by the late notice of the witness. Appellate courts find prejudice to exist when there is no time to prepare or adequately respond to surprise testimony. Defendants received notice of [the Magditches'] intention to call Cardano on March 13, 2015, along with his name and address. However, it was not until March 18, 2015, two business days prior to the start of trial, that Defendants were notified of the proposed purpose and anticipated testimony for which Cardano was being called.

At that point in time, Defendants' experts had rendered opinions, not based on the absence of evidence regarding asthmatic symptoms as [the Magditches] suggest, but instead upon the existence of contrary evidence by other witnesses and medical records that indicated [Decedent] was not exhibiting physical manifestations of asthma (via vital signs and appearance). To allow the testimony of a witness who undermines Defendants' entire case without sufficient time for Defendants' experts to evaluate how the new factual circumstances possibly impact their opinions is unfairly prejudicial to Defendants.

This leads us to the second factor: the ability of the Defendants to cure the prejudice. Defendants attempted to cure the prejudice in the only manner they could by requesting a continuance of the trial. We denied the request for continuance for the reasons set forth in our analysis of the third factor below. With the continuance of trial denied, Defendants' prejudice was irreversible.

Even assuming Defendants were capable of completing a deposition of Cardano prior to trial, Defendants would not have had time to gather information prior to the deposition to make it meaningful. Time was required to investigate whether the witness was subject to impeachment or otherwise credible. Cardano's testimony was inconsistent with every other person [who] had contact with [Decedent] on January 4, 2012; and, in addition, Cardano described a correctional officer who had contact with both [Decedent] and Cardano and allegedly denied [Decedent] access to medical help. To allow Cardano's testimony without the time or opportunity to investigate the substance of his statements would have been unfairly prejudicial to Defendants.

In order to challenge Cardano's testimony, Defendants would require time to receive and examine prison records and medical records related to Cardano, as well as time to investigate additional people, including the unidentified correctional officer. Further, additional information might have been sought by Defendants in order to differentiate the physical manifestations of asthma versus the physical manifestations of heroin withdrawal, which [Decedent] was experiencing. Without the continuance of trial, the prejudice against Defendants was irreversible.

As to the third factor, allowing Cardano to testify would have disrupted the orderly and efficient trial of the case and the other cases before this court. In order to cure the prejudice suffered by Defendants as a result of Cardano's surprise testimony, such a significant amount of time would have been required that the only alternative would have been to continue the trial, not simply delay the commencement of the trial by a few days. It should be noted that the jury was selected as of March 23, 2015.

This case was originally attached for trial on November 10, 2014, by order of court dated April 24, 2013, On February 6, 2014, upon stipulation of the parties, the trial date in this matter was continued to March 23, 2015. The court schedule could not accommodate a delay in the trial, and, in order to continue the trial, a new trial date would not have been available for over a year.

Because each Pennsylvania county operates its calendar differently, a description of the calendaring system in Lehigh County would help explain why a continuance was not a satisfactory solution.

Cases are assigned to individual judges, so that the judge may guide the discovery and scheduling of a case throughout its entirety. …

…Early in the case, case management deadlines are established by the court, and this judge does so only after consultation with counsel. In medical malpractice cases, and other cases of significance (designated "major cases" in some counties) we give those cases a specialized listing. This method is favored by the civil bar, plaintiff and defense alike, because it

allows them to schedule and present expert witnesses in person, rather than by video.

Because we have a 2 week trial term every 6 weeks (the other weeks are filled with family court, custody cases, and miscellaneous civil matters), that means we can list only 9 to 10 major cases a year. Even with this restriction, we are able to close out our major cases in a period of time which is fair to all parties. But it does mean that if you miss your spot, which has been reserved for approximately two years, the next one or two years of opportunity have already been assigned to other cases.

In this case, the trial was originally scheduled for November 10, 2014. Upon the joint request of the parties, the deadlines were extended and the trial was rescheduled for March 23, 2015. The new schedule required the court to schedule the matter at a time which had previously been promised to another trial. We decided to give priority to this case; we advised the other case that they would not be reached, and the lawyers in the other case released their expert witnesses.

Therefore, to reschedule this case would have meant two cases with lengthy trial attachments would have been continued for a lengthy period of time while precious courtroom time went unused, an inefficient use of judicial resources.

Finally, the fourth factor is whether there was bad faith or willfulness in failing to comply with the court's order. [the Magditches] knew as of September 17, 2013, the names of all the inmates in Housing Unit 2A of the Lehigh County Prison on the date of this unfortunate incident. However, there is no finding that [the Magditches'] counsel acted in bad faith or acted with a willful disobedience in failing to comply with the court's discovery order. [The Magditches'] counsel was not purposely attempting a trial by ambush. We do not have any reason to believe that this eleventh hour offer was the result of poor preparation on the part of [the Magditches'] counsel, knowing said counsel as hard working and ethical. We note, however, that, although the intention of counsel is not questioned, the consequence to Defendants remains unchanged.

In the absence of bad faith, the most significant factors for our consideration are the importance of the witness's testimony

and the prejudice, if any, to the party against whom the witness will testify.

[The Magditches] argue that Cardano's testimony is of the utmost importance in that it could have helped the jury establish causation. We cannot disagree with [the Magditches] that that possibility exists. However, we do not believe that Cardano's testimony holds the weight that [the Magditches] give it. …

… We considered and weighed both the importance of Cardano's testimony as offered by counsel and the irreversible prejudice that Defendants would have suffered in allowing such testimony and found at the time of trial that fairness dictated preclusion of Cardano's testimony.

TCO, 7/31/2015, at 15-20 (citations omitted).

Under these circumstances, we discern no error in the trial court's analysis and cannot find the trial court abused its discretion in disallowing Cardano's testimony. In doing so we note that "abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Freed v. Geisinger Med. Ctr.,* 910 A.2d 68, 72 (Pa. Super. 2006) (citing *Grady v. Frito–Lay, Inc.,* 559, 839 A.2d 1038, 1046 (Pa. 2003)).

Having concluded the trial court did not abuse its discretion in granting Defendant's motion *in limine*, the Magditches are entitled to no relief from this Court.

Judgment affirmed.

J-A08045-16

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: <u>6/8/2016</u>